**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY NELSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>OMNICELL, INC., RANDALL A. LIPPS, and ROBIN G. SEIM<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Jeffrey Nelson ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, review and analysis of (a) regulatory filings made by Omnicell, Inc. ("Omnicell" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) media reports about Omnicell and its management; and (c) a review of other publicly available information concerning Omnicell and its management. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a securities class action on behalf of purchasers of the common stock of Omnicell between May 2, 2014 and March 2, 2015, inclusive (the "Class Period"), seeking to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Defendant Omnicell provides automation and business information solutions enabling healthcare systems to streamline the medication administration process and manage costly medical supplies for increased operational efficiency and enhanced patient safety. The automation, analytics and medication adherence solutions in hospitals and longer-term care environments are designed to enable healthcare facilities to acquire, manage, dispense and administer medications and medical-surgical supplies and are intended to enhance patient safety, reduce medication errors, reduce operating costs, improve workflow, and increase operational efficiency.

3. Prior to the start of the Class Period, the Company touted that "[o]ver 2,800 hospitals in the United States use one or more of our products, of which more than 1,800 hospitals in the United States have installed our automated hardware/software solutions for controlling, dispensing, acquiring, verifying, tracking and analyzing medications and medical and surgical supplies. Approximately 6,000 hospitals, institutional pharmacies, and retail pharmacies use our products worldwide."

4. Throughout the Class Period, however, defendants made false and/or misleading statements, as well as failed to disclose material adverse facts pertaining to arrangements with certain customers. Specifically, defendants made false and/or misleading statements and/or failed to disclose: (1) the existence of a "side letter" arrangement with a Company customer for certain discounts and Company products that were to be provided at no cost, but which were not reflected in the final invoices paid by the customer; (2) that the Company lacked adequate internal control over financial reporting; and (3) that as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

5. On March 2, 2015, after the market closed, the Company disclosed in a regulatory filing that it would be unable to timely file its Annual Report on Form 10-K for the year ended December 31, 2014, and intends to file the Form 10-K within fifteen calendar days of the original due date. According to the Company, "additional time is required by the Company to investigate a notice

received on February 27, 2015 from a Company employee alleging, among other matters, the existence of a 'side letter' arrangement with a Company customer for certain discounts and Company products that were to be provided at no cost, but which were not reflected in the final invoices paid by the customer."

6. As a result of this news, shares of Omnicell fell $2.14, or over 6%, on extremely heavy volume, to close at $33.08 on March 3, 2015.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company maintains is principal executive offices in this District.

10. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

11. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Omnicell during the Class Period and has been damaged upon the revelation of the alleged corrective disclosure.

12. Defendant Omnicell provides automation solutions for medication and supply management in healthcare worldwide. The company operates in two segments, Acute Care and Non-Acute Care. The Company maintains principal executive offices at 590 East Middlefield Road,

3

Mountain View, California 94043.  The Company's common stock is traded on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "OMCL."

13. Defendant Randall A. Lipps ("Lipps") has served as the Company's President and Chief Executive Officer ("CEO") at all relevant times.

14. Defendant Robin G. Seim ("Seim") has served as the Company's Executive Vice President Finance and Chief Financial Officer ("CFO") at all relevant times.

15. Defendants Lipps and Seim are collectively referred to herein as the "Individual Defendants." Defendant Omnicell and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

16. Omnicell provides an integrated suite of clinical infrastructure and workflow automation solutions for healthcare facilities. The Company's solutions include pharmacy and supply systems, clinical reference tools, an Internet-based procurement application, and decision support tools. Omnicell sells and leases its products and services to a range of healthcare facilities.

17. Prior to the start of the Class Period, the Company touted the fact that "[o]ver 2,800 hospitals in the United States use one or more of our products, of which more than 1,800 hospitals in the United States have installed our automated hardware/software solutions for controlling, dispensing, acquiring, verifying, tracking and analyzing medications and medical and surgical supplies. Approximately 6,000 hospitals, institutional pharmacies, and retail pharmacies use our products worldwide."

### Materially False and Misleading
### Statements Issued During the Period

18. On May 1, 2014, after the markets closed, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter of 2014. The

Company reported net income of $6.2 million, or $0.17 per diluted share, on revenue of $101.8 million, compared to net income of $3.4 million, or $0.10 per diluted share, on revenue of $87.1 million in the first quarter of 2013.

19. On May 12, 2014, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by defendant Seim, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Lipps and Seim, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

20. On August 31, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the second quarter of 2014. The Company reported net income of $7.8 million, or $0.21 per diluted share, on revenue of $105.1 million, compared to net income of $6.0 million, or $0.17 per diluted share, on revenue of $93.7 million in the second quarter of 2013.

21. On August 7, 2014, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by defendant Seim, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Lipps and Seim, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22. On October 30, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the third quarter of 2014. The Company reported net income of $7.3 million, or $0.20 per diluted share, on revenue of $112.5 million, compared

to net income of $7.8 million, or $0.21 per diluted share, on revenue of $94 million in the third quarter of 2013.

23. On November 10, 2014, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by defendant Seim, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Lipps and Seim, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. On February 3, 2015, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the fourth quarter and full year of 2014. For the fourth quarter, the Company reported net income of $9.2 million, or $0.25 per diluted share, on revenue of $121.5 million, compared to net income of $6.8 million, or $0.19 per diluted share, on revenue of $105.7 million in the fourth quarter of 2013. For the full year, the Company reported net income of $30.5 million, or $0.83 per diluted share, on revenue of $440.9 million, compared to net income of $24.0 million, or $0.67 per diluted share, on revenue of $380.6 million in the prior year.

25. The statements referenced in ¶¶ 18 - 24 above were materially false and/or misleading because they misrepresented and failed to disclose material adverse facts pertaining to, among other things, favorable side arrangements the Company maintained with certain customers. Specifically, defendants made false and/or misleading statements and/or failed to disclose: (1) the existence of a "side letter" arrangement with a Company customer for certain discounts and Company products that were to be provided at no cost, but which were not reflected in the final invoices paid by the customer; (2) that the Company lacked adequate internal controls over financial reporting; and (3) that as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

**THE TRUTH IS REVEALED**

26. On March 2, 2015, after the market closed, the Company disclosed in a regulatory filing that it would be unable to timely file its Annual Report on Form 10-K for the year ended December 31, 2014. According to the Company, "additional time is required by the Company to investigate a notice received on February 27, 2015 from a Company employee alleging, among other matters, the existence of a 'side letter' arrangement with a Company customer for certain discounts and Company products that were to be provided at no cost, but which were not reflected in the final invoices paid by the customer."

27. As a result of this news, shares of Omnicell fell $2.14, or over 6%, on extremely heavy volume, to close at $33.08 on March 3, 2015.

**CLASS ACTION ALLEGATIONS**

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Omnicell securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

29. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Omnicell securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records

maintained by Omnicell or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Omnicell;
- whether the Individual Defendants caused Omnicell to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Omnicell securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

34. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Omnicell securities are traded in efficient markets;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold Omnicell securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

35. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United*

*States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Omnicell securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

39. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Omnicell securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

40. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Omnicell as specified herein.

41. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Omnicell's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Omnicell and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Omnicell securities during the Class Period.

42. Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) Individual Defendants, by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's financial condition; (3) Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and were advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

43. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect

of concealing Omnicell's future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' misstatements and omissions throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

44. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Omnicell securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Omnicell's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Omnicell securities during the Class Period at artificially high prices and were or will be damaged thereby.

45. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Omnicell's true operational condition, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Omnicell's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

46. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

47. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

48. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

**Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. Individual Defendants acted as controlling persons of Omnicell within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

51. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or

influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

52. As set forth above, Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

53. By virtue of their positions as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

54. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: March 18, 2015

**POMERANTZ LLP**

/s/ Jennifer Pafiti
Jennifer Pafiti
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: 310-285-5330

**POMERANTZ LLP**
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184